(636 P.2d 227)

No. 52,827

In the Matter of the Estate of Mabel Carter, Deceased. ROBERT E. CARTER, PHYLISS EILENE WRIGHT, and BELINDA FAYE WILLIE, and MRS. GLEN CARTER, Children and Wife of Glen P. Carter, *Appellants*, v. ROBERT M. CARTER, *Appellee.*

Opinion filed November 25, 1981.

*Steven L. Davis,* of Patton, Meyer & Davis, Chartered, of Emporia, for the appellants.

*Thomas A. Krueger,* of Krueger & Shaw, of Emporia, for the appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

PRAGER, J.: This is a controversy which arose in the administration of an estate and which involves the issue of whether a certain certificate of deposit should be included in the inventory of the estate. The district court ruled that the certificate of deposit in question was owned in joint tenancy with right of survivorship rather than by tenancy in common and, accordingly, ordered the certificate of deposit to be excluded from the estate inventory.

The decedent is Mabel Carter. On April 17, 1972, Mabel Carter obtained a certificate of deposit in the amount of $15,000 from the Emporia State Bank. The certificate was made payable to the order of "Mabel E. Carter, or Robert M. Carter or Glen P. Carter" upon presentation of the certificate properly endorsed on the maturity date. The appellee, Robert M. Carter, is Mabel's son and the administrator of Mabel's estate. The appellants, Robert E. Carter, Phyliss Eilene Wright, and Belinda Faye Willie, and Mrs. Glen Carter, are the children and wife of Glen P. Carter, Mabel's son, who died on October 26, 1976. Robert M. Carter, as administrator, did not include the certificate of deposit as an asset in the estate of Mabel Carter. He claimed that the certificate of deposit was owned in joint tenancy with the right of survivorship. Since

he was the only survivor, he claimed ownership and cashed the certificate and deposited the proceeds in his own account.

The appellants filed a motion to compel the administrator to include the certificate in the inventory of the estate. The trial court, over the objection of the appellants, allowed two officers of Emporia State Bank to testify about the intentions and practices of the bank in 1972 concerning the ownership of certificates of deposit. The bank officers were not able to testify as to actual conversations with Mabel Carter at the time the certificate of deposit was created. Neither of the bank officers could state what her actual intentions were at that time. Their testimony was restricted to the usual procedures followed by the bank. They stated that, under those procedures, where a certificate of deposit is issued in the name of one person *or* another person, that would create a joint tenancy with right of survivorship, unless the qualifying words "tenancy in common" were placed on the certificate. At the time of the trial, their testimony also disclosed that the bank had a special stamp, "As Joint Tenants and not as Tenants in Common", which is customarily imprinted on certificates of deposit to show that the parties named own the certificate jointly with right of survivorship. On December 18, 1969, a certificate of deposit had previously been issued by the Emporia State Bank payable to "Mrs. Mabel E. Carter or Glenn P. Carter or Robert M. Carter," and across the face of the certificate were imprinted the magic words, "As Joint Tenants and not as Tenants in Common." The bank president frankly admitted that, without the stamp on the face of the certificate, he could not really say how the depositor intended the certificate to be owned. No other evidence as to the intentions of Mabel Carter was presented at the trial. The district court ruled that the certificate of deposit issued April 17, 1972, was owned in joint tenancy with right of survivorship and that Robert M. Carter was entitled to the certificate as the surviving joint tenant. The appellants have appealed to this court.

The first point raised by the appellants on the appeal is that the trial court erred in permitting the testimony of the two bank officers as to the procedures of the bank and the bank's intentions in creating the certificate of deposit which was the subject of dispute. The trial court relied upon *In re Estate of Wood,* 218 Kan. 630, 545 P.2d 307 (1976). In *Wood,* three certificates of

deposit were issued payable to "James B. Wood or Robert Davies" or to either one of them or the survivor or survivors upon presentation and surrender of the certificate properly endorsed. The Supreme Court held that the language on the certificates was ambiguous and not sufficient to establish ownership as a matter of law, and thus, extrinsic evidence was admissible to show the depositor's intention. In this regard, the Supreme Court stated:

"In admitting parol evidence the inquiry should be confined to the facts and circumstances existing prior to and contemporaneously with the execution of the contracts, since it is only the intention of the depositor at the time of the creation of the account that is material. *(Simonich, Executrix v. Wilt,* 197 Kan. 417, 424, 417 P.2d 139; and *In re Estate of Matthews,* supra at 503.)

. . . .

"The bank president's proffered testimony discloses the bank intended to create a joint tenancy. Where a bank official intends to create a joint tenancy account or joint tenancy ownership in certificates of deposit because that is what the depositor wanted or requested, his testimony is relevant and should be admitted. *(Edwards v. Ledford,* [201 Kan.] at 521; *In re Estate of Smith,* [199 Kan.] at 92; and *Miller v. Higgins,* [188 Kan.] at 741.) . . ." pp. 633-34.

In *Wood,* the proffered testimony of the bank official indicated that he had personally explained the legal effect of a joint tenancy to the depositor and that the depositor, an attorney, had acknowledged that Davies, the other person named on the certificates, could cash them. Thus, the testimony was clearly relevant to the depositor's intentions. In the present case, the two bank officers testified that they did *not know* the intentions of Mabel Carter at the time the certificate was issued.

In several other Kansas cases, parol evidence has been permitted to show the nature of the ownership of certain bank accounts. In *Edwards v. Ledford,* 201 Kan. 518, 441 P.2d 834 (1968), the testimony of bank officials was admitted to show that there was oral agreement between the bank and the depositor that a joint tenancy account was to be established. The depositor had gone into the bank specifically asking an account be opened whereby any money in the account would belong to his daughter if anything happened to him. The testimony there also showed that the bank officials had explained fully the legal effect of a joint tenancy account to the depositor and then asked the depositor if that was what he wanted. The depositor replied, "Yes, that is the way I want it."

In other cases, where parol evidence was presented to show the depositor's intent, the testimony concerned statements made by

the depositor at the time the account was created. These cases are authority for the proposition that a bank official may testify about bank practices, if those practices reflect what the bank depositor actually wanted, and the witness could testify what the depositor actually wanted. *In re Estate of Matthews,* 208 Kan. 492, 493 P.2d 555 (1972); *In re Estate of Johnson,* 202 Kan. 684, 452 P.2d 286 (1969).

In the case now before us, the officials of the Emporia State Bank could only testify as to their usual bank practices. They admitted that they could not testify about the specific intentions of Mabel Carter. Under these circumstances, it is highly questionable whether the bank officials' testimony should have been admitted at all. However, if it is assumed that the testimony of the bank officials was admissible, then we are compelled by the undisputed testimony to conclude that the certificate of deposit in this case was held in a tenancy in common and not in joint tenancy with right of survivorship.

The Kansas legislature has seen fit to create a presumption that joint ownership of either real or personal property is held by a tenancy in common rather than by a joint tenancy with right of survivorship. K.S.A. 58-501 provides in part as follows:

"58-501. Tenancy in common unless joint tenancy intended, when; exception; joint tenancy provisions. Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it *clear* that a joint tenancy was intended to be created: Except, That a grant or devise to executors or trustees, as such, shall create in them a joint tenancy unless the grant or devise expressly declares otherwise." (Emphasis supplied.)

In *Edwards,* the court points out that joint tenancies as they existed at common law have never been favored in this state. K.S.A. 58-501 and its predecessor abolished joint tenancies and the doctrine of survivorship created by operation of law, but did not forbid joint tenancies and survivorship by negotiation or contract of the parties concerned. We believe that simply using the word "or" between the names of the owners of a certificate of deposit is not sufficient to satisfy the statute. If that were the case, every certificate of deposit or bank account owned by two persons in the alternative would presumptively be owned in joint tenancy with the right of survivorship. This would reverse the statutory presumption and be contrary to the clear intent of K.S.A. 58-501.

In the case before us, in order for the certificate of deposit to be held to be in joint tenancy with right of survivorship, the appellee, Robert M. Carter, had the burden of showing such an intent on the part of Mabel Carter. As noted above, the two bank officers testified that they did *not know* what the actual intent of Mabel Carter was. Mr. Carter testified that his mother was knowledgeable in business affairs and managed a farm operation after her husband's death. She did her own banking and generally handled all of her business affairs. He also testified that he thought she knew the significance of a joint tenancy with the right of survivorship because she had created one with respect to certain real estate. He further testified that he did *not know* what her intent was about the certificate of deposit and, in fact, never talked to her about it.

It appears to us that the bank officers relied primarily on K.S.A. 9-1205. That statute is not relevant in the present case. In *Wood,* the following observation is made:

"Previous cases emphasize this statute is for the bank's protection in paying on 'joint' accounts. K.S.A. 9-1205 and its predecessors have nothing to do with the ownership of the funds as between two persons alleged to be joint tenants. [Citations omitted.]" 218 Kan. at 633.

On the basis of the rationale set forth above, we have concluded that, since the bank officers could not testify about the actual intentions of the particular depositor, Mabel Carter, their testimony as to the practices of the bank was not relevant. We have further concluded that, even if their testimony about bank practices was admissible, there was still not sufficient evidence presented to make it clear that the depositor intended that the certificate of deposit be held in joint tenancy with right of survivorship. K.S.A. 58-501 requires clear evidence regarding the depositor's intentions at the time the certificate of deposit or bank account was created. Since no such evidence was presented, the judgment of the district court must be reversed and the case remanded with instructions to direct the administrator to include the certificate of deposit in the inventory of the estate of Mabel Carter. The relative ownership of the certificate of deposit as among the tenants in common is a matter to be determined by the district court on remand.

The judgment of the district court is reversed and remanded with directions.