ROBERT B. KRAMER ET AL., APPELLANTS, V. MID-WESTERN
DEVELOPMENT, INC., APPELLEE.
425 N.W.2d 336
Filed July 1, 1988.   No. 86-984.

Robert G. Simmons, Jr., of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellants.

Deborah R. Gilg, of Gilg Law Office, P.C., for appellee.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and JOHN MURPHY, D.J.

FAHRNBRUCH, J.

The question in this bench-tried law action is whether the plaintiff realtors are entitled to a commission upon the sale of the Stagecoach Inn motel in Ogallala, Nebraska. The trial court found that they were not. Plaintiffs appealed. We affirm.

Stephen W. Brener of New York was the realtor selected by the defendant-appellee, Mid-Western Development, Inc., to sell its property. Robert B. Kramer, a realtor employed by Winterer Realty, Inc., of Scottsbluff, Nebraska, acted as Brener's cobroker.

Where a law action is tried to the court without a jury, the findings of fact of the trial court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Russell v. Board of Regents*, 228 Neb. 518, 423 N.W.2d 126 (1988); *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d

424 (1988); *Kubista v. Jordan,* 228 Neb. 244, 422 N.W.2d 78 (1988).

On February 26, 1982, Mid-Western entered into a 90-day written listing agreement whereby Brener was to sell the Stagecoach Inn. The listing provided automatic 90-day renewals unless Mid-Western notified Brener of its intention to terminate the listing agreement. The agreement also provided that if Mid-Western sold the property to a buyer who was introduced by Brener to the defendant within 24 months after the termination of the period of exclusivity, then the commission would be deemed earned, due, and payable.

Dr. Ernest Schabauer, for some period of time prior to the times relevant to this lawsuit, purchased business properties for investment purposes. He had utilized the services of several realtors, including Kramer. Dr. Schabauer first learned that the Stagecoach Inn was for sale in 1980 from the manager of a motel he owned in Kimball, Nebraska. At that time, in a brief conversation, Dr. Schabauer told his wife, Marilyn, he was not interested in the motel.

In the fall of 1981, Kramer told Marilyn Schabauer that the Stagecoach Inn was for sale. Mrs. Schabauer told Kramer that her husband was not interested. Kramer later contacted Mrs. Schabauer about the inn and told her he planned to call the owners about a possible listing. She again told Kramer that the Schabauers were not interested.

In March of 1982, Winterer Realty, through Kramer, entered into an oral agreement with Brener, which authorized Kramer to act as a cobroker in selling the property. We note that Neb. Rev. Stat. § 36-107 (Reissue 1984), requiring that contracts for the sale of property between the landowner and a real estate agent or broker must be in writing, does not apply to contracts between an agent and subagent. See *Reasoner v. Yates,* 90 Neb. 757, 134 N.W. 651 (1912). None of the Mid-Western shareholders were made aware of the cobrokerage arrangement until after the inn had been sold.

Sometime in March of 1982, Kramer contacted Mrs. Schabauer by telephone and, again, advised her that the Stagecoach Inn was for sale. He later mailed information on the property addressed to Dr. and Mrs. Schabauer. The letter

within the envelope was directed to Mrs. Schabauer, who looked only at an enclosed profit and loss statement. Dr. Schabauer saw the Kramer envelope and instructed his wife to throw it away. Dr. Schabauer testified that his previous dealings with Kramer had been unsatisfactory. He testified that he did not know the contents of the envelope or that it related to the Stagecoach Inn. Dr. Schabauer said he was simply not interested in any property Kramer had to offer.

In the latter part of 1982, Mid-Western decided to terminate its listing agreement with Brener, effective November 30, 1982. A letter to that effect was mailed to Brener in early November 1982. About that same time, Dr. Schabauer contacted Ralph Deputy, Stagecoach Inn's manager, to determine whether the inn was still for sale. He was referred to Frank Kersenbrock, president of Mid-Western's board of directors.

Dr. Schabauer had inspected the inn once or twice prior to November 30, 1982. During December of 1982, serious negotiations between Dr. Schabauer and Mid-Western took place. They culminated in the sale of the inn on December 28, 1982, to Dr. Schabauer. Mrs. Schabauer took no part in these negotiations, nor was she a party to the sales contract. The deed lists only Dr. Schabauer as grantee.

In February of 1983, Kramer learned that the Stagecoach Inn had been sold to Dr. Schabauer and demanded a commission from Mid-Western. When his demand was refused, the plaintiffs commenced this action, claiming that Kramer had satisfied the requirement of the listing agreement by introducing Dr. Schabauer to the defendant.

The trial court found that Kramer's telephone contact with Mrs. Schabauer, together with the mailing of information on the property, did not constitute introduction of Dr. Schabauer to Mid-Western. The court further found that at no time, personally, by telephone, or by correspondence, was Kramer in contact with Dr. Schabauer. The trial court held that the plaintiffs failed to meet their burden of proof.

The record reflects the plaintiffs' failure to meet their burden of proving that Dr. Schabauer was "introduced" to Mid-Western through Kramer's efforts. The findings of fact by the trial court in that regard are not clearly wrong.

Plaintiffs also claim that Mrs. Schabauer, at all relevant times herein, acted as the agent of Dr. Schabauer and that through his agent, Dr. Schabauer was "introduced" to Mid-Western. The trial court found that claim to have no merit. We agree. The trial court's judgment is affirmed.

AFFIRMED.